# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

LEONID RABINKOV,
CATHY BEGANO,
ANDREW ATKINS, and
MARC TREVITHICK, on behalf of themselves and others similarly situated,

      Plaintiffs,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

      Defendant.

---

## CLASS ACTION COMPLAINT

---

Plaintiffs Leonid Rabinkov, Cathy Begano, Andrew Atkins, and Marc Trevithick, on behalf of themselves and others similarly situated, bring this Class Action Complaint against the Colorado Department of Corrections ("CDOC") for violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, for failure to provide videophones in CDOC facilities.

## JURISDICTION AND VENUE

1.     This action arises under the laws of the United States. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. §§ 1331 and 1343.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as all of the events giving rise to the claims occurred in the District of Colorado.

## PARTIES

3. Plaintiff Leonid Rabinkov is a prisoner in the custody of CDOC housed at the Colorado Territorial Correctional Facility ("CTCF") in Cañon City, Colorado.

4. Mr. Rabinkov is deaf, and as such is a qualified individual with a disability as that term is used in Title II and Section 504.

5. Mr. Rabinkov was born deaf and ASL is his primary language.

6. Plaintiff Begano is a prisoner in the custody of CDOC housed at the Denver Women's Correctional Facility ("DWCF") in Denver, Colorado.

7. Ms. Begano is deaf, and as such is a qualified individual with a disability as that term is used in Title II and Section 504.

8. Ms. Begano has been deaf since she was a young child and ASL is her primary language.

9. Plaintiff Andrew Atkins is a prisoner in the custody of CDOC housed at CTCF.

10. Mr. Atkins is deaf, and as such is a qualified individual with a disability as that term is used in Title II and Section 504.

11. Mr. Atkins was born deaf and ASL is his primary language.

12. Plaintiff Marc Trevithick is a prisoner in the custody of CDOC housed at CTCF.

13. Mr. Trevithick is deaf, and as such is a qualified individual with a disability as that term is used in Title II and Section 504.

14. Mr. Trevithick has been deaf since he was a young child and ASL is his primary language.

15. Defendant Colorado Department of Corrections ("CDOC") is a department of the State of Colorado. CDOC has custody of Plaintiffs and the putative class.

16. CDOC receives federal financial assistance as that term is used in Section 504.

**FACTS**

17. ASL is a visual language. It is "a complete, complex language that employs signs made by moving the hands combined with facial expressions and postures of the body." For example, "English speakers ask a question by raising the pitch of their voice; ASL users ask a question by raising their eyebrows, widening their eyes, and tilting their bodies forward."

https://www.nidcd.nih.gov/health/american-sign-language

18. ASL is not just English in gestures. It has grammar and syntax that are completely different from English. When deaf people are raised using ASL as their first or primary language, written English is a foreign language, which is often acquired incompletely and imperfectly.

19. English is not the native language of any of the Plaintiffs; communicating in written English is awkward, time-consuming, and incomplete for them. They are not able to fully express themselves in written English or converse about the range of subjects they can in ASL.

20. Because deaf people cannot use a conventional telephone, technology has developed to permit them to communicate at a distance.

21. The earliest such technology, the teletypewriter or TTY, was invented in approximately 1964. It involved placing a standard telephone handset into an "acoustic coupler" connected to a teleprinter machine. Over time, the device evolved into a single piece of equipment that included a QWERTY keyboard and was connected to a phone jack.

22. A TTY requires that individuals at both ends of the communication have specific TTY equipment.

23. In a TTY communication, each participant types out his or her side of the conversation, then waits while the other person types back.

24. As such, it is a more cumbersome form of communication than a telephone conversation between hearing people.

25. For the same reason, it is a more cumbersome form of communication than a videophone conversation between deaf people or a deaf person and a hearing person who knows ASL.

26. Current TTY equipment is becoming antiquated, requires frequent maintenance from sources that are not familiar or trained on the use/repair of a TTY and creates unfair delays for offenders due to the limited number of TTY machines department wide when equipment is down. CDOC/Rogers 002132.

27. The average literacy level of the American deaf Community is at the fourth-grade reading level.

28. It is fairly common for people who are born deaf to be less than fluent in written English. Deposition of Janet Smith 35:6-10.

29. It is more and more common for deaf people to use videophones rather than TTYs.

30. Facial expressions, head tilts and nods, and eyebrow raises are important elements that encode the grammar of ASL. These linguistic elements are not found in English nor can they be conveyed in written notes or in a TTY text conversation.

31. As the name suggests, a videophone has a camera and a screen and transmits a video signal, permitting deaf people to see each other and communicate directly with one another in ASL.

32. Videophones let an inmate for whom ASL is their native language speak in their native language with people who have videophones or who are hearing. Deposition of Adrienne Jacobson 18:1-11.

33. When a deaf person uses a TTY to communicate with a hearing person, they use TTY relay.

34. With TTY relay, the deaf person types into the TTY, and a relay operator reads the text to the hearing person. When the hearing person speaks, the relay operator types their words back to the deaf person.

35. When a deaf person uses a videophone to communicate with a hearing person, they use video relay service ("VRS").

36. With VRS, the deaf person signs into the videophone, and a VRS operator interprets the message to the hearing person. When the hearing person speaks, the VRS operator signs the message back to the deaf person.

37. If deaf prisoners want to contact another deaf person outside the facility, it is most likely these days that the called party will have a videophone, not a TTY.

38. When a deaf prisoner uses a TTY to call a deaf person who has a videophone, it goes through a three-step process. The deaf prisoner types the message into the TTY, a TTY relay operator speaks it to a VRS operator; and the VRS operator signs it in ASL to the called party. When the deaf called party signs his or her response, this process is reversed: they sign

their response to the VRS operator, who speaks it to the TTY relay operator, who types it to the deaf prisoner.

39. This process thus adds two intermediaries to a conversation between two people and can cause additional delays and miscommunication.

40. CDOC permits prisoners to make phone calls to individuals who are on their phone list. Administrative Regulation ("AR") 850-12 ¶ IV(B)(1).

41. Hearing prisoners who wish to contact hearing family members are permitted to walk up to the phones at any time they are available and place a call, provided they have paid for the time (or are calling collect) and are calling someone on their phone list.

42. AR 850-12 provides that "[o]ffenders with hearing and/or speech disabilities, and offenders who wish to communicate with parties who have such disabilities, are afforded access to a [TTY] or comparable equipment." *Id*. ¶ IV(A)(4).

43. Plaintiffs have attempted to use TTYs in CDOC facilities on a number of occasions. The people with whom they communicate include both hearing and deaf individuals. Since they have been in the custody of CDOC, Plaintiffs have not been able to communicate effectively telephonically with friends and family. They have has lost contact with friends and family members due to the lack of effective communication.

44. When Plaintiffs use the TTY, it regularly freezes or disconnects and its keys are extremely sensitive, causing typographical errors. When the TTY is broken, it often takes the CDOC an unreasonable time to fix it. Occasionally, Plaintiffs have specific dates or times that they have scheduled to call their family and friends, but when they get to the TTY, it is broken. This has led to strained relationships between friends and family.

45. The policy limiting Plaintiffs to communicating through a TTY essentially limits them to writing letters -- some on paper, some on the TTY -- while prisoners with hearing family are permitted two different modes of communication: letters; and the more direct and intimate communication of a phone call.

46. Plaintiffs are not able to communicate effectively telephonically with friends and family. This has caused and continues to cause Plaintiffs emotional and psychological distress, inconvenience, frustration, depression, and heartache.

47. Provision of videophones is necessary to provide equivalent and effective telephonic services to deaf inmates who are able to communicate in ASL, regardless of level of intelligible speech or level of literacy.

48. The only way for Plaintiffs to have an equal opportunity to participate in and enjoy the benefits of CDOC's telecommunications services and programs is to use a videophone.

49. Using a TTY is not as effective as the conventional telephone is for hearing prisoners.

50. All of the Plaintiffs have repeatedly requested that they be provided access to videophone service to make calls to individuals outside their respective facilities.

51. Many facilities around the country, including the El Paso County and the Denver County Jail, provide videophones for deaf and hard of hearing inmates.

52. Defendant's actions in refusing to provide a videophone to Plaintiffs and the putative class are and have been intentional and/or constituted deliberate indifference to the strong likelihood that pursuit of this policy will likely result in a violation of Plaintiffs' federally protected rights. Plaintiffs have alerted Defendants to the need for a videophone and that need is

obvious. Defendants have knowingly and intentionally refused to provide the requested videophone.

## CLASS ACTION ALLEGATIONS

53. Plaintiffs bring this action on their own behalf and, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of all other persons similarly situated.

54. The putative class consists of all current and future inmates in the custody of the Colorado Department of Corrections who are deaf or hard of hearing and require videophones to communicate effectively and/or to access and participate in the inmate telephone program of the Colorado Department of Corrections (the "Class").

55. The exact size of the Class, though unknown to Plaintiffs, is so numerous that joinder of all members is impracticable.

56. Common questions of law and fact that apply to all members of the Class include, but are not limited to:

   a. whether Title III and Section 504 require CDOC to provide videophones to the Class; and

   b. whether CDOC's proffered alternative, the TTY, is equally effective for the Class.

57. Plaintiffs' claims are typical of the claims of the Class. Like Class members, Plaintiffs are deaf and require videophones for effective communications.

58. Plaintiffs, through counsel, will fairly and adequately protect the interests of the Class as a whole.

59. Plaintiffs do not have any conflicts with the Class and have retained counsel experienced in disability rights and class action litigation.

60. Defendant has acted on grounds that apply generally to the Class as a whole, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

61. Specifically, Defendant has refused to provide videophones to any deaf prisoner in CDOC custody.

62. Injunctive relief ordering CDOC to provide videophones to Class members is appropriate with respect to all Class members.

**FIRST CLAIM FOR RELIEF:**
**VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12131 *et seq.***

63. Plaintiffs incorporate the allegations set forth in the remainder of this Class Action Complaint as if fully set forth herein.

64. Title II prohibits public entities such as Defendant CDOC from excluding individuals with disabilities from participation in or denying them the benefits of their services, programs or activities, or otherwise subjecting such individuals to discrimination. 42 U.S.C. § 12132.

65. Because they are deaf and are prisoners in the custody of the CDOC, Plaintiffs and the Class are qualified individuals with disabilities within the meaning of the Americans with Disabilities Act. 42 U.S.C. § 12102.

66. Defendant CDOC excluded Plaintiffs and the Class from participation in and/or denied them the benefits of it services, programs, and/or activities and/or subjected them to discrimination on the basis of disability, in violation of Title II and its implementing regulations as more fully described in this Class Action Complaint.

67. Such discrimination includes but is not limited to:

   a. denying Plaintiffs and the Class the opportunity to participate in or benefit from an aid, benefit, or service, 28 C.F.R. § 35.130(b)(1)(i);

   b. affording Plaintiffs and the Class the opportunity to participate in or benefit from an aid, benefit, or service that is not equal to that afforded others, *see id.* § 35.130(b)(1)(ii);

   c. providing Plaintiffs and the Class with aids, benefits, and services that are not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others, *see id.* § 35.130(b)(1)(iii);

   d. using criteria and methods of administration that have the effect of subjecting Plaintiffs and the Class to discrimination on the basis of disability, *see id.* § 35.130(b)(3)(i);

   e. using criteria and methods of administration have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of CDOC's program with respect to Plaintiffs and the Class, *see id.* § 35.130(b)(3)(ii);

   f. failing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination against Plaintiffs and the Class on the basis of disability, *see id.* § 35.130(b)(7);

   g. failing to ensure that communications with Plaintiffs and the Class are as effective as communications with others, *see id.* § 35.160(a)(1);

    h. failing to furnish appropriate auxiliary aids and services where necessary to afford Plaintiffs and the Class an equal opportunity to participate in, and enjoy the benefits of, CDOC's services, programs, or activities, *see id.* § 35.160(b)(1); and/or

    i. failing to give primary consideration to the requests of Plaintiffs and the Class concerning the types of auxiliary aids and services necessary, *see id.* § 35.160(b)(2).

68. Plaintiffs and the Class are qualified to participate in CDOC services, programs, and activities within the meaning of Title II.

69. As a direct and proximate result of Defendant CDOC's acts, omissions, and violations alleged above, Plaintiffs and the Class have suffered damages as more fully described above.

70. Plaintiffs and the Class have been injured and aggrieved by and will continue to be injured and aggrieved by Defendant CDOC's discrimination against them.

### SECOND CLAIM FOR RELIEF: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT 49 U.S.C. § 794

71. Plaintiffs incorporate the allegations set forth in the remainder of this Class Action Complaint as if fully set forth herein.

72. Section 504 prohibits discrimination on the basis of disability by recipients of federal financial assistance. 29 U.S.C. § 794.

73. Defendant CDOC receives federal financial assistance as that term is used in Section 504.

74. Because they are deaf and are prisoners in the custody of the CDOC, Plaintiffs and the Class are qualified individuals with disabilities within the meaning of Section 504. 29 U.S.C. § 705(9) (incorporating by reference 42 U.S.C. § 12102).

75. Defendant CDOC excluded Plaintiffs and the Class from participation in and/or denied them the benefits of it programs and/or activities and/or subjected them to discrimination on the basis of disability in violation of Section 504 and its implementing regulations as more fully described in this Class Action Complaint.

76. Such discrimination includes but is not limited to:

   a. denying Plaintiffs and the Class the opportunity to participate in CDOC's programs and activities, *see* 28 C.F.R. § 42.503(b)(1)(i);

   b. denying Plaintiffs and the Class an equal opportunity to achieve the same benefits that others achieve in CDOC's programs and activities, *id.* § 42.503(b)(1)(ii);

   c. using criteria or methods of administration that either purposely or in effect discriminate on the basis of disability or defeat or substantially impair accomplishment of the objectives of CDOC's programs or activities with respect Plaintiffs and the Class; *id.* § 42.503(b)(3);

   d. failing to provide appropriate auxiliary aids to Plaintiffs and the Class, thereby discriminatorily impairing or excluding them from participation in CDOC's programs and activities, *see id.* § 42.503(f); and/or

   e. failing to provide reasonable accommodations to Plaintiffs and the Class as necessary to ensure that they have meaningful access to CDOC's programs, activities, or benefits, *see Alexander v. Choate*, 469 U.S. 287, 301 (1985).

77. Plaintiffs and the Class are qualified to participate in CDOC services, programs, and activities within the meaning of Section 504.

78. As a direct and proximate result of Defendant CDOC's acts, omissions, and violations alleged above, Plaintiffs and the Class have suffered damages, as more fully described above.

79. Plaintiffs and the Class have been injured and aggrieved by and will continue to be injured and aggrieved by Defendant CDOC's discrimination against them.

**WHEREFORE, Plaintiff respectfully requests:**

1. That this Court assume jurisdiction;

2. That this Court certify the class described in Paragraph 54 above under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

3. That this Court declare Defendant's actions described herein to be in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

4. That this Court enter an injunction ordering Defendant to cease violating the rights of Plaintiffs and the Class under Title II and Section 504, and to cease discriminating against them by, among other things, providing videophone service to the Class and implementing policies to ensure access to such videophones;

5. That this Court award Plaintiffs and the Class and/or their attorneys their reasonable attorneys' fees and costs; and

6. That this Court award such additional or alternative relief as may be just, proper, and equitable.

Respectfully submitted,

*s/ Amy F. Robertson*
Amy F. Robertson
Timothy P. Fox
Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
303.757.7901
arobertson@creeclaw.org

Attorneys for Plaintiffs

Dated: November 14, 2018